Hauk v. Louden et al., 199 Ill. App. 112.

---

## B. Riley Hauk, Appellee, v. Sue B. Louden and Mildred Louden, Executrices, Appellants.

### (Not to be reported in full.)

Appeal from the Circuit Court of Clinton county; the Hon. JAMES C. McBRIDE, Judge, presiding. Heard in this court at the October term, 1915. Reversed and remanded. Opinion filed April 17, 1916.

## Statement of the Case.

Action on a claim by B. Riley Hauk, plaintiff, against Sue B. Louden and Mildred Louden, execu-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

trices of the estate of Walter S. Louden, deceased, defendants, for cash advanced to deceased to buy stock under an alleged arrangement by which plaintiff was to take the stock in his name and deceased to take up the stock and refund the purchase price by a certain date. From a judgment for plaintiff, defendants appeal.

There were no written pleadings filed, but a claim in the following form:

"Estate of Walter S. Louden, deceased, to B. Riley Hauk, Debtor. December 20, 1913, to cash advanced purchase 10 shares of capital stock of M. & O. Milk Company, said stock by agreement to be taken up in the name of claimant with the understanding and agreement that in consideration thereof the deceased would take up said stock and refund the purchase price on or before August 20, 1914 .................. $1000.00
"Interest on said sum at 5 per cent to date ............................... 18.62

"Total .............................. $1018.62"

J. B. Vogelsang, a witness for plaintiff, had a claim for the same amount, based on the same facts involved in this case. The trial court heard the evidence in support of both of these claims at the same time. Plaintiff was the president of and stockholder in the B. Riley Hauk Supply Company, a corporation of St. Louis, Missouri, hereafter for convenience designated as the Supply Company, whose business was the handling of milk, milk products and dairy supplies. Vogelsang was secretary and treasurer and a stockholder in said company. Walter S. Louden, the deceased, was for many years prior to his death the president of a corporation known as the M. & O. Milk Company, of Waterloo, Illinois, hereinafter for convenience designated as the M. & O. Company, whose business was the buying and shipping of milk and dairy products.

A contract was entered into on November 29, 1913, by which the Supply Company agreed to purchase of the M. & O. Milk Company 1000 cases of milk for a consideration of $3,000, which consideration was evidenced by sixteen notes aggregating said amount, and these notes were by the M. & O. Company indorsed and were negotiated at its bank for the purpose of raising funds to carry on its business, thereafter, the M. & O. Company becoming financially involved. Walter S. Louden, its president, undertook to reorganize the same, and found that before this could be done it would be necessary to provide for the existing indebtedness of said company, part of which indebtedness was the $3,000 worth of notes, which the M. & O. Company had received from the Supply Company, and had indorsed and negotiated through its bank.

In order to rid the M. & O. Company from its obligation as indorser on the notes of the Supply Company, Walter S. Louden, its president, approached plaintiff and Vogelsang with the proposition that they purchase from the new company, which Louden was proposing to organize, $3,000 worth of its capital stock, and the proceeds of the capital stock to be used to take up these notes. Plaintiff and Vogelsang finally reached an agreement with Louden by which the M. & O. Company as reorganized was to issue to plaintiff and Vogelsang $1,500, respectively, of its capital stock, and the agreement was carried out and plaintiff and Vogelsang, as president and secretary of the Supply Company, called a meeting of said company and ratified the transaction as one made by the company, and at said meeting passed a resolution wherein it was recited that plaintiff and Vogelsang had agreed, in order to release the M. & O. Company of its obligation on the contract relating to the payment of the $3,000 in notes (being notes given by the Supply Company to the M. & O. Company and by it indorsed and negotiated), to take each $1,500 of preferred stock of the M. & O. Com-

pany, and reimburse the Supply Company for the payment of said notes when due. It was further provided in said resolution that plaintiff and Vogelsang had covenanted and agreed to give the Supply Company their personal notes due on or before one year for $1,500 each, and that by said transaction the M. & O. Company was released of all further obligation pertaining to the contract. After this meeting of the Supply Company on December 20, 1913, a letter was written by the Supply Company to the bank that held the notes of $3,000 indorsed by the M. & O. Company, which letter among other things contained the following:

"We therefore advise you that under an arrangement made with W. S. Louden today, B. Riley Hauk, President of our Company and J. B. Vogelsang, Secretary and Treasurer of our Company, have mutually agreed to take $1500.00 of the preferred stock of the M. & O. Milk Company and in turn have made financial arrangements with the B. Riley Hauk Supply Company to take care of the above financial obligation, and the B. Riley Hauk Supply Company hereby agrees to pay these notes releasing the M. & O. Milk Company from any liability."

Upon receipt of said stock from the M. & O. Company, plaintiff and Vogelsang each executed to the Supply Company their individual note of $1,500 each and deposited, respectively, as collateral ten shares of the capital stock of said M. & O. Company, as reorganized, and under some arrangement with Louden he executed certain notes to the Supply Company aggregating $1,000, and five of the shares of stock issued to plaintiff and five of the shares of stock issued to Vogelsang were deposited as collateral with the note of Louden. The notes were paid by the Supply Company out of its own funds.

As to the conversation which took place between plaintiff and Vogelsang and Louden at the time Lou-

den approached plaintiff and Vogelsang with the proposition that they should take $3,000 worth of stock of the M. & O. Company, in order that the same might be reorganized as above stated, plaintiff testified that Louden stated to him at said time: " 'We are going to increase the capital stock and reorganize down at Waterloo and make it a co-operative company and get the farmers interested in taking stock to the extent of $100,000.00.' He says, 'Before we can make that move there is an obligation'—I don't know whether it was himself or whether it was the company—'of $50,000 which had to be cleaned up.' I says, 'How is that going to be done?' He says, 'We want you to take stock in that company, at least the remainder of that amount of those notes.' * * * He says, 'Here is the plan. You take $2000.00 worth of stock—yourself and Vogelsang—and I will issue you also $1000.00 worth of stock, $500.00 to each, and make it $1500.00; and $1000.00 I will give you my personal note for, and put that stock up as collateral and I will assure you that if you will take and help me out in this transaction that I will dispose of that $2000.00 worth of stock. * * * I will take and dispose of your stock for you; in ninety days you will have your money back.' "

The testimony of Vogelsang was practically to the same effect as plaintiff's with reference to the conversation and transaction had with Louden. Vogelsang testified that after the proposition made by Louden with reference to their taking stock, he said, " 'Walter, how soon will you clean us up then?' He says, 'I can't promise you anything but you hold that stock temporarily until we get the reorganization completed and I will have plenty of money and will clean the matter up.' I asked him how long that would take, and he said, 'Probably sixty or ninety days.' I says, 'Why not give your notes for all of it?' He says, 'I couldn't make my arrangements at the bank if we did.' * * *

He says, 'Vogelsang, you will never regret this and you will be cleaned up before spring arrives.' " It was on the testimony of plaintiff and of the witness Vogelsang with reference to this conversation and transaction had with W. S. Louden that plaintiff based his claim for recovery in the case.

The minutes of the special meeting of the board of directors of the Supply Company above referred to were to the effect that plaintiff and J. B. Vogelsang, as the only directors present, entered into a contract with the M. & O. Milk Company, issued certain promissory notes maturing on the 20th of February, March, April, June, July and August, amounting to $3,000, and for special consideration and advantages to the Supply Company, plaintiff and Vogelsang agreed, in order to release the M. & O. Company of its obligation, to take up the Supply Company notes for $3,000, as above stated; to take each $1,500 of preferred stock of the M. & O. Company and to reimburse the Supply Company for the payment of the above notes when due. There was nothing in the record to disclose whether plaintiff and Vogelsang constituted a quorum of the directors for the transaction of business of said company or as to whether the other directors of said company, if any, were notified of said meeting.

The evidence of the bookkeeper for the Supply Company was to the effect that after the special meeting of the Supply Company, in which it was made to assume and pay the $3,000 indebtedness heretofore referred to, a charge was entered against the M. & O. Milk Company, J. D. Vogelsang and B. Riley Hauk for $3,000. Said witness testified that this account appeared on a private ledger of said company, and showed that the account was carried against both Vogelsang and plaintiff, and that all sums received in the way of dividends or credits in connection with this transaction were credited to said account. After the death of Louden,

$710.51 was paid on the claim probated against his estate by the Supply Company, and which amount so paid was applied on the joint indebtedness of plaintiff and Vogelsang, and the amount still owing by plaintiff and Vogelsang on this account as shown by the books of said company was $2,132.82.

NOLEMAN & SMITH, for appellants.

MURRAY & LAGER, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

## Abstract of the Decision.

1. SALES, § 373*—*when evidence insufficient to establish contract for repurchase of corporate stocks.* In an action by an officer of a corporation against the estate of a deceased officer of another corporation, which latter corporation failed to satisfy an indorsed note owed by the first corporation to the second corporation for supplies, where it appeared that such deceased officer, in order to improve the finances of his corporation and dispose of such indebtedness on the indorsed note, sold stock to plaintiff and another officer of the purchasing corporation, evidence *held* insufficient to establish an agreement by deceased to repurchase such stock.

2. ESTOPPEL, § 47*—*when stockholders of corporation estopped to question validity of record of meetings of directors.* Stockholders of a corporation are estopped to dispute the record of a meeting of the directors made by them.

3. CORPORATIONS, § 261*—*when evidence sufficient to show joint and several liability of directors to corporation.* In an action by an officer of a corporation against the estate of a deceased officer of another corporation, which latter corporation had failed to take up an indorsed note owed by the first corporation after payment by the second corporation to it, where it appeared that such deceased officer in order to improve the finances of his corporation, and to dispose of the indebtedness on the indorsed note, sold stock to plaintiff and another officer of the first corporation and that such first corporation paid for such stock out of its own funds, but such officers of the first corporation and deceased gave their

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

individual notes to the first corporation, evidence *held* sufficient to show that such officers of the first corporation were jointly and severally liable to it for the amount so expended.

4. WITNESSES, § 74*—*when officer of corporation incompetent witness in action by another officer.* An officer and stockholder of a corporation who, with another officer, is jointly and severally liable for the repayment of money by the corporation for stock purchased by such officers, is an incompetent witness in an action by such other officer to recover the purchase price of the stock from the estate of another person who agreed to take up such stock.

5. CORPORATIONS, § 261*—*how officers may relieve themselves from individual liability on indebtedness to corporation.* Officers of a corporation who deal with themselves as individuals have no right to relieve themselves as individuals from their liability on an indebtedness to the corporation except. upon full payment of their obligations.